Case number 18-768. Member A. Trudel, et al. appellant v. SunTrust Bank, also known as SunTrust Banks, Inc., et al. Mr. Lambert, for the appellant. Mr. Bernstein, for the appellant. Mr. Bernstein, for the appellant. Good morning. Good morning, Your Honor. May it please the Court, my name is Angelos Lambert. I represent all plaintiff's defendants, plaintiff's appellants in this case. This case is at the heart of the constitutional law of the United States, more particularly about Article VI of the Supremacy Clause of the U.S. Constitution. There is an issue here. It goes into the fact that the Court agreed that there was presumably a balance on the bank's account, and that balance was not rebutted, that it was reflected by the documents. And then the Court decided that the bank can keep the money after 12 years. So this case is about dormant accounts, about the interaction of the federal banking laws and the state laws. The basis for the ruling by the District Court was the 12-year Statute of Repulse in Florida. Based on that statute, the Court ruled that whatever was the balance on the account, the bank may keep the money, which ultimately means that after 12 years, the bank may embezzle the balance in the account. Our position is that there is a Supremacy Clause, Article VI, which says that the judges in every state shall be bound thereby. Anything in the constitutional laws of any state to the contrary, notwithstanding. Our position is that the Federal Deposit Insurance Act is the law which is binding on financial institutions or the banks, that the federal law preempts the application of state laws such as the Statute of Repulse based on fraud. Our position is that nothing in the Federal Deposit Insurance Act allows any bank in this country to keep the money just because it was an abandoned account or a dormant account or unclaimed account. There is no such provision, and your humble servant researched for nearly a month the banking legislation to find any clause, any loophole when a bank could forfeit the funds under any pretext on any account. It doesn't exist. And my brother has not been able to find anything to the contrary. In other words, if even a minimum account balance is still on the account, when the claim is made, the bank ought to return the money to the account holder. However, the conclusion that the District Court made was that as long as 12 years elapsed in Florida, the bank may keep the money and it is not responsible. So our position is that the federal banking legislation preempts the application of the Statute of Repulse for fraud of 12 years in Florida. There is nothing in the federal banking legislation that would allow a national bank like SunTrust Bank to embezzle the money regardless of how much time elapsed. 12 years, not 12 years. So the federal statute of limitations for embezzlement is 5 years. Right. So it sounds like federal law is less generous than Florida law. Yes, but that's about the banking legislation, which is particularly the Federal Deposit Insurance Act. That act in our view doesn't allow to embezzle the money on the banking account. The money was proven by the evidence that there was remaining $3,700 approximately. And that the bank took a position that as long as 12 years passed, then it has no obligation to return even that money. At the beginning, there was $1 million. $1 million disappeared from the account. But the main issue is here, even a small amount like $3,000, if it's still on the account, it cannot be forfeited by a national bank. Nothing in the federal insurance act allows a bank to embezzle the money on the account. The next issue is the non-compliance by some trusts with reporting obligations in Florida. There are several statutes which are cited in the brief. That includes chapters 717, section 117, it's about the reporting obligations of the bank to report unclaimed property. One of the facts in this case, it's proven that the bank had the unclaimed funds for over 7 years, 7 years and 3 months, instead of 5 years. It was already in violation of the state law on reporting obligations to report unclaimed property to the state of Florida, to the Bureau of Unclaimed Property. That statute is for a reason. In 1954, there was a national conference of commissioners on the uniform disposition of unclaimed property, which worked out a uniform act. It was adopted in practically all the states. In Florida, it's 5 years. It's proven on the documents that it took more than 7 years for the bank to react to the fact that the account holders never undertook any transactions on the account. Just because of that, we cite more than 10 cases in 6 states, which say essentially that the reporting obligation is for the protection of the public. The cases which we cite are from New York, from California, Wisconsin, Illinois, New Jersey, and Tennessee. 6 states. The cases in all those 6 states, even though they address different versions of the unclaimed property acts, it doesn't matter. The courts say in all those states that this was the law to protect the account holders. Therefore, in all those states, the courts have established that as long as the bank doesn't report unclaimed assets, then it tolls the statute of limitations. There is not one case to the contrary. My brother has been unable to cite a single case to the contrary of this concept. Once the bank floods with its obligation to report an unclaimed account, then the statute of limitations is told until as long as it takes to find out about that account. Our position is that if the judgment is affirmed, then it would send a signal to the banks that once they take the so-called lucrative silence approach, meaning that they don't disclose to anyone about the dormant account, then after 12 years they can keep the money. But that was not the intent of the Uniform Disposition of Unclaimed Property Act in the first place. And if one would look into the comments and notes of the National Conference of Commissioners, that was the intent, that if the banking institution or any other institution which holds the money fails to report to the state on the unclaimed property, and fails to disclose those assets to the state, then the statute of limitations must be told until and unless the bank complies with those obligations. Thank you very much. Thank you, Your Honors, and may it please the Court, Brad Hernstein on behalf of SunTrust Bank. That issue in this case was a bank account that was opened at SunTrust Bank back in 1995 by a gentleman by the name of Jenny Cherburn. He opened the account for his wife and his son, and the account was managed by an assistant that he had. The account was closed in January of 2003, and under SunTrust regulations, they keep records once an account is closed for a period of seven years. So the records with respect to this account were purged from SunTrust's system in 2010. This lawsuit was brought in November of 2015, and after going through several initial complaints, we landed on the second amended complaint. SunTrust filed a motion to dismiss all 12 counts. The district court granted all but two of the claims that remained. So the remaining two claims was one was a claim for an accounting, and the second claim was for fraudulent concealment. After that, the parties engaged in written discovery. SunTrust responded to interrogatories, requests for documents, requests for admissions. The appellants were able to engage in third-party discovery because the fraudulent concealment claim was based on allegations that during the first two complaints that had been filed, that SunTrust had made statements that they believed were misrepresentations, that we didn't have any records. They believed the records were with third-party vendors of SunTrust, including Iron Mountain and Viewpoint. So during discovery, subpoenas were sent to Iron Mountain and Viewpoint. After that, plaintiffs requested additional time to conduct more written discovery to send subpoenas to some law firms that had represented the estates of not only Mr. Sherman... When SunTrust first contacted and was repeatedly contacted and asked if it had any records on this account, and they showed you debit cards or some kind of cards, and SunTrust said no records. Had SunTrust checked its archived records at that point? Or did it just answer without checking its archived records? The first time that I think SunTrust learned of the issue here was when it was served with the complaint. In terms of the allegations that there was some debit cards and that someone approached SunTrust about the accounts sometime in 2003, SunTrust doesn't have any record of that because all the records were purged in 2010. But in 2003, the account had closed at that point in time. So you deny that they were approached and told that they had no record of the account? I have no knowledge one way or another if somebody approached SunTrust. I believe the allegation is that in 2003, an investigator went into a SunTrust bank branch and asked them about the accounts. Now, if that were to occur today, a financial institution including SunTrust has an obligation of confidentiality. It wouldn't give a third party with no relationship, no power of attorney, no personal representative of the state, somebody information about an account one way or the other. But that wasn't the rule in 2003? I'm sorry?  I believe that was the rule in 2003. I'm just saying what would happen most likely today, given the confidentiality of customer accounts, it was the same rule in 2003. SunTrust doesn't have any records as to whether or not that occurred in 2003. The concealment claim, I know it's morphed and you've just been asked about the theory of recent concealment in litigation. But the claim they seem to be pressing now is that what was concealed is closing the account in 2003, not turning over any account balance to the state under receipt laws, and at worst, embezzling the money. And all of that, the closure happened more than 12 years before the complaint was filed, which would seem to be dispositive for repose purposes. Except we have this case from the Florida Supreme Court called Hess v. Philip Morris, which seems to say that the repose period doesn't even start to run until the concealment stops. And there was no point at which the bank disclosed the fact that, hey, we've closed this account and done whatever. So why doesn't that prevent a repose defense? Well, I think we need to look at a few things. The district court was looking at the fraudulent concealment claim as asserted in the Second Amendment complaint. It wasn't until SunTrust filed the motion for summary judgment, and in opposition to the motion for summary judgment, where the appellants sort of had a new theory as to the fraudulent concealment. And there's plenty of case law that states that a plaintiff may not amend their claims in opposition to a motion for summary judgment. I understand. And you might win this point on the ground that the theory wasn't adequately pleaded or teed up. But I'm just asking you about the concealment rationale. The testimony that we have in this case with respect to that issue... I'm sorry, the repose rationale. Yeah. That SunTrust does not close an account with money remaining. So there was a bank statement that was recovered that showed a balance of 3,000 and change from 2001. The account was closed in 2003. The account could not have been closed and would not have been closed if there was money left in the account. So the argument that we failed to comply with Florida statute or our own rules, not only were they not raised in the Second Amendment complaint, but it misstates the facts as to what happened and what could happen with respect to an account. An account can only be closed if a customer removes all the money or there are no funds or a negative deposit and the bank closes the account. I hope that answers your question. That seems like an argument that the bank did nothing wrong rather than an argument that whatever the bank might have done wrong all happened more than 12 years before the complaint was filed. Yes, I agree with that. We don't believe that this account was closed with funds in it. There's no record or evidence to establish that the account was closed. I think the district court, for purposes of granting the motion for summary judgment, was we're going to assume that there was money left in the account. But under the statute of repose, 12 years had passed from the date of when the issue should have been risen and therefore we don't even have to get to that. But again, going back a step, that wasn't the allegations in the Second Amendment complaint. Do you agree the statute of repose is an affirmative defense that has to be raised by the defendant? No, I do not. I believe that because it's a jurisdictional issue that the court can raise it on its own. In this case, the appellants make the argument that we didn't raise... Well, how can it be jurisdictional and a forfeitable affirmative defense at the same time? I think the court on its own can raise it as an issue because it determines whether or not the court has jurisdiction. Hess says it's an affirmative defense. I agree that it's an affirmative defense. That's not jurisdictional. Affirmative defenses are forfeitable. Jurisdiction is not forfeitable. No, and I agree with that. My point is I think the court can raise it on its own, which was sort of... Without notice to the other side, raising an affirmative defense for the defendant? Really? If it goes to whether or not the court has jurisdiction, I believe... It doesn't go to jurisdiction if it's an affirmative defense. Well, in this case... Yes, it's jurisdictional, but it's not jurisdictional. In this case, when we filed the motion to dismiss the Second Amendment complaint, along with the first two complaints, the statute of repose and the statute of limitations were raised by SunTrust. So I think the plaintiff's argument was that, hey, we didn't know SunTrust was raising a statute of repose... Your summary judgment motion did not seek summary judgment on the basis of the statute of repose. Agreed. Okay. Agreed. And it's not jurisdictional. So what authority did the district court have to raise an affirmative defense for you? And essentially file a summary judgment motion for you? I think the district court was giving the appellants the benefit of the doubt. Because the issues raised by them with respect to... So give them any benefit of the doubt when you dismiss... It's hard to say that creating summary judgment against somebody is giving them the benefit of the doubt. I think the point the district court was making is they initially said, look, appellants, you are raising, in opposition to the motion for summary judgment, new claims, new issues that weren't part of your complaint. And I don't have to consider them at this time because you're raising them for the first time in opposition to the motion for summary judgment. But I will look at them, and that's when the court said, look, I don't need to look at these issues again because these new claims are sort of a reiteration of the claims that I had already dismissed based on the statute of repose. So that's how the district court approached it. Well, they were only a reiteration that they fell under some loose general umbrella of fraudulent concealment, but they were entirely new legal theories. The Sheets problem, the embezzlement claims, those are entirely new legal theories. And so it really would have been, if the district court wanted to address them on the merits, it would have been up to a slanderous whether to raise the affirmative defense of statute of repose. I don't disagree with that. I think what the court decided to do, though, was I don't have to consider these new theories because they're not part of the Second Amendment complaint. But while they are new theories, the defense that SunTrust raised initially is the same. And so the same reason why the court elected to dismiss many of the initial claims is the same reason why these claims wouldn't pass muster had they been raised in the first place. What do we do with the fact that the district court thought it had to raise this issue because it thought it was jurisdictional? And if that were incorrect, we don't know that the district court would have done what it did here, to raise the affirmative defense for you. That's the thing that I'm trying to figure out, how the district court thought it had to raise statute of repose. If that were not jurisdictional, if that were a mistake on the district court's part, how do we know? Well, I don't know if the district court thought it had to raise the issues. I think the district court, and I don't remember the specific language, it just decided to, whether or not to try and address all the new issues raised by the appellants at that time or not. But I don't know if the district court believed that it had to do so. Well, the plaintiffs didn't have a chance to brief the statute of repose, correct? Well, not in response to the motion for summary judgment. They certainly had a chance to do so with the motions to dismiss. No, but on these claims, whether the district court could raise it on its own, whether it applied, the answer may be it applies just the same, but normally we want parties to have notice and an opportunity to litigate and brief something. I agree. I think the initial problem here is, you know, we're set with a Second Amendment complaint that has certain claims, certain allegations, and we conduct discovery based on those claims and those allegations, and you get to the point when you go through all the discovery, you go through all the depositions, and you file a motion based on the claims and the evidence to date, and then you've got to shift in arguments as to not only the arguments I'm raising in opposition to the motion for summary judgment, but the theories of the case. I don't think it's appropriate for, hey, at this point we're going to start this case over and take a look at everything fresh and go over a new round of discovery to address these new claims. And I think the district court pointed that out. But to be fair to the plaintiff, it went a step further and said, this is why I don't believe these claims would get past the motion to dismiss stage. Thank you. Your Honor, three points. Number one, page 24 of the Rules and Regulations of Some Trust says in black and white that an account may be closed with money in it, and it's full discretion. And what happens is that the bank sends out a letter inviting to collect the balance. If nobody comes, then the next thing which happens, it's not reported. And based on the totality of the facts that were discovered, there is a kind of pragmatic approach. If nobody comes to collect the money, the bank is silent. It doesn't disclose any information. After some passage of time, the money is embedded. It's a very unfortunate scheme, but that's what the commissioners considered as lucrative silence in 1954 when they drafted the Uniform Disposition of Unclaimed Property Act. Number two, my brother misstates the record about the balance of $3,000 plus on the account. There is no evidence whatsoever that that money was disposed of, taken out from the account. So the presumption is that as of January 22, 2003, that money was on the account. There is no evidence to the contrary. In other words, even if that small amount of money was on the account, my client has the right to come to the branch and say, well, this is the latest discovered statement. Please pay on that statement. It's a very simple situation. And the last thing, the third point. My brother says that they disposed of the data in 2010. Four experts show in their declarations that it's not doable, it's not feasible, and it is not done by the bank institutions. Because if one attempts to delete some data, it will affect other portions of the data. Ultimately, it's not done. There is also litigation. There are many other cases. Banks just don't do that. And the very last footnote. A bank in the Czech Republic responded to the letter of obituary from the district court and obtained all the banking records from the same years, 1995 through 2000. So in a small country like the Czech Republic, it takes five months for the court process and for the compliance by a small bank in Prague, the Czech Republic, to obtain and to send the banking records to the United States, and it has taken forever for some trusts to do the same. It goes also for the fact that the Rule 30b-6 deposition was a complete frustration because the bank designated a trial attorney to come to the deposition. He didn't know the answers to 139 questions. So we ask this Honorable Court to rule if it's acceptable or not for a witness to say, I don't know on 139 questions on the Rule 30b-6 deposition. Thank you very much. Stand, please.
judges: Rogers, Millett, Katsas